# In the United States District Court for the Southern District of Georgia Waycross Division



FILED
John E. Triplett, Acting Clerk
United States District Court

By *casbell* at 9:40 am, Sep 30, 2020

PAUL CREWS,

    Plaintiff,

    v.

TAHSIN INDUSTRIAL CORP. USA,

    Defendant.

CV 5:18-078

## ORDER

Before the Court are two motions: Defendant Tahsin Industrial Corp. USA's Motion for Summary Judgment, dkt. no. 42; and Plaintiff Paul Crews's Motion for Partial Summary Judgment, dkt. no. 44. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED as moot**.

## BACKGROUND

This case arises from an October 16, 2016 incident when Plaintiff was injured after falling from a tree stand (the "Stand") while hunting with his 14-year-old son. See Dkt. No. 42-2 ¶¶ 1, 2; Dkt. No. 63-4 ¶¶ 1, 2. On October 8, 2018, Plaintiff filed the present action against several entities allegedly involved in the

manufacture and design of the Stand.  <u>See</u> Dkt. No. 1.  The parties later jointly moved to dismiss all defendants except for Defendant Tahsin, stipulating that Defendant Tahsin was the sole manufacturer of the Stand and its component parts.  <u>See</u> Dkt. No. 37.  This Court granted the parties' motion, and now only Defendant Tahsin remains.  <u>See</u> Dkt. No. 38.

When fully constructed, the Stand (also known as a "ladder stand") is a fifteen-foot ladder connected to a two-person seat; it can be mounted to a tree to hunt from an elevated position. <u>See</u> Dkt. No. 42-2 ¶¶ 4, 5; Dkt. No. 63-4 ¶¶ 4, 5; Dkt. No. 1 ¶ 40. Plaintiff says he purchased the Stand in August or September of 2015 from a Walmart Store in Waycross, Georgia.  Dkt. No. 42-4 at 16.  The Stand came in a sealed cardboard box that appeared to be in its original state from the manufacturer.  <u>Id.</u> at 17.

Plaintiff first installed the Stand before the 2015 hunting season on private property that belonged to an acquaintance.  <u>See</u> <u>id.</u> at 20.  The product included a manual with written warnings and instructions, which Plaintiff reviewed entirely.  <u>Id.</u> at 17– 18, 20.  Plaintiff testified that he had no problems assembling the Stand and estimated that he hunted in the Stand about two dozen times from September to late December 2015, after which he took the Stand down, accounted for all of its parts, and stored it in his barn.  <u>Id.</u> at 20-21.

In late September or early October of 2016, Plaintiff retrieved the Stand from his barn and installed it on a different tree on the same property. See id. at 22, 27; Dkt. No. 63-1 ¶ 5. Plaintiff described his installation process as "put[ting] the brace that goes from the ladder to the tree, ratchet[ing] it," and then "go[ing] up the tree to do the top ratchet to secure it." Id. at 24. Plaintiff confirmed that the strap connecting the support bar to the tree and the strap connecting the top of the Stand to the tree were the only straps he used to install the Stand. See id. at 26. After installing the Stand in 2016, Plaintiff left it attached to the tree until he used it on the day of the accident. See id. at 27.

On October 16, 2016, Plaintiff and his son returned to the Stand to hunt. See id. Before ascending the ladder, Plaintiff inspected the Stand to ensure it was stable and the ratchet straps were secured. See Dkt. No. 42-4 at 28. Plaintiff testified that aside from a "little surface rust," the Stand was structurally sound. See id. at 27. Following his inspection, Plaintiff climbed the ladder to the seating platform. Id. at 28. Plaintiff testified that when he climbed up, the Stand "never squeaked" and "felt stable." Id. His son then climbed up and sat down beside him. Id. Plaintiff handed his son a rifle, and as his son was putting the rifle down, the Stand suddenly collapsed, and they both fell to the ground. Id. at 27, 28, 30. Plaintiff alleges

the Stand collapsed because the legs on the ladder broke or bent, which caused the ratchet strap at the top of the Stand to break. Id. at 24, 27, 29; Dkt. No. 63-4 ¶ 2.  Plaintiff's son was largely uninjured by the fall, but Plaintiff landed in a seated position, severely injuring his back.  See Dkt. No. 42-4 at 29; Dkt. No. 42-13 at 7.

In the Complaint, Plaintiff contends the Stand was not intended to collapse or break at weights less than 500 pounds—a weight limit that Plaintiff and his son did not meet or exceed on the day of the accident.  See Dkt. No. 1 ¶¶ 49, 54; see also Dkt. No. 42-4 at 27, 28 (stating that Plaintiff was "about 160 pounds" and his son "weighed about 100 pound[s]" at the time of the accident).  Accordingly, Plaintiff argues that the Stand was "not merchantable and reasonably suited to the use intended" and Defendant is strictly liable to Plaintiff under O.C.G.A. § 51-1-11, a Georgia state law concerning product liability.  See Dkt. No. 1 ¶¶ 57-58.[1]  Plaintiff also appears to assert claims for failure to warn and breach of warranty.  See id. ¶¶ 52-55; Dkt. No. 63 at 23.

Defendant filed a Motion for Summary Judgment on October 11, 2019.  See Dkt. No. 42.  In its Motion, Defendant argues that Plaintiff has failed to establish either that the Stand was

---

[1] Though Plaintiff's only theory of liability arises under state law, this Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.

defective or that any such defect proximately caused Plaintiff's injuries.  See Dkt. No. 42-3 at 1.  Defendant also argues that Plaintiff's action is barred by the doctrines of misuse and assumption of risk.  See id. at 16-20.

Plaintiff then filed a Motion for Partial Summary Judgment on October 12, 2019.  See Dkt. No. 44.  In his Motion, Plaintiff requests that the Court enter summary judgment in Plaintiff's favor on fifteen separate issues that mostly address Defendant's claimed defenses.  See Dkt. No. 44-1; Dkt. No. 11.

### LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is "material" only if it "might affect the outcome of the suit under the governing law."  Id. (quoting Anderson, 477 U.S. at 248).  Factual disputes that are "irrelevant or unnecessary" are insufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  The movant must show the court that there is an absence of evidence to support the nonmoving party's case.  See id. at 325.  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist.  See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)).  Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.  Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I.  Defendant's Motion for Summary Judgment

#### 1. Manufacturing Defect

Under Georgia law, a plaintiff claiming a product defect under O.C.G.A. § 51-1-11 must establish three fundamental elements: "(1) the defendant was the manufacturer of the product; (2) the product, when sold, was not merchantable and reasonably suited to the use intended, and (3) the product's defective condition proximately caused plaintiff['s] injury." Brazil v. Janssen Rsch. Dev. LLC, 196 F. Supp. 3d 1351, 1357 (N.D. Ga. 2016) (citing Chicago Hardware & Furniture Co. v. Letterman, 510 S.E.2d 875, 877 (Ga. Ct. App. 1999)).  In setting forth the last two elements, a plaintiff need not "specify precisely the nature of the defect," but he must at least show that the product "did not operate as intended" and such operational failure "was the proximate cause of his injuries." Williams v. Am. Med. Sys., 548 S.E.2d 371, 374 (Ga. Ct. App. 2001).

The parties do not dispute the first element: Defendant was the manufacturer of the Stand at issue in this case.  See Dkt. No. 37 at 1.  However, the parties do dispute the last two elements: that the Stand had a defect and that the defect proximately caused Plaintiff's injuries.  As explained below, Plaintiff is unable to provide sufficient evidence to create a jury issue on either of these two elements.

### a.   Defect

In his initial pleading, Plaintiff does not identify any particular defect that caused the Stand to collapse; he simply alleges that the Stand was defective because it collapsed under a

7

weight of less than 300 pounds, which was less than the product's listed 500-pound weight capacity. See Dkt. No. 1 ¶¶ 51–55. Defendant argues in its Motion for Summary Judgment that Plaintiff has not provided evidence other than speculation and conjecture as to a defect. See Dkt. No. 42-3 at 10–11. Although product defects can sometimes "be inferred from circumstantial evidence," including the product's failure itself, see, e.g., Firestone Tire & Rubber Co. v. King, 244 S.E.2d 905, 909 (Ga. Ct. App. 1978), these cases tend to be those where "the product failure destroys evidence so that it is impossible . . . to determine if the product had a manufacturing defect." Justice v. Ford Motor Co., No. 1:07-CV-928, 2012 WL 2513495, at *4 (N.D. Ga. June 27, 2012) (emphasis added); see also Graff v. Baja Marine Corp., 310 F. App'x 298, 305 (11th Cir. 2009) (refusing to allow plaintiffs to rely on circumstantial evidence where plaintiffs "had ample opportunity to test the [product] to establish direct evidence of a defect"). Because no party in this case contends that the Stand was destroyed, the inference of a defect is unavailing to Plaintiff. Defendant thus carried its initial burden with respect to the defect element, and it became Plaintiff's duty to come forward with affirmative evidence tending to establish a genuine issue of material fact as to a defect in the Stand. See Anderson, 477 U.S. at 257.

In Plaintiff's response to Defendant's Motion, Plaintiff alleges the Stand "was not manufactured in accordance with the design and specifications" in three ways: 1) "[t]he metal in the legs was not the required thickness," 2) "the metal sleeve that was meant to add strength to the crimped portion of the ladder legs did not cover the crimp as required," and 3) "micro fibers in the strap were brittle."  See Dkt. No. 63 at 16.

In support of his first allegation of defect, Plaintiff claims in an affidavit that he "measured the thickness of the metal in the legs of the ladder stand."  See Dkt. No. 63-1 ¶ 6.  Plaintiff alleges the "[r]ight leg measurements were 1.1 mm; 0.9 mm; [0].5 mm[;] and 1.3 mm," and the "[l]eft leg measurements were 1.0 mm; 0.6 mm; 0.7 mm[;] and 0.8 mm."  Id.  Plaintiff contends these measurements do not meet the manufacturer's specifications within a set of engineering drawings related to the Stand model.  See Dkt. No. 63 at 13.  Plaintiff identified these documents through a deposition of Defendant's Rule 30(b)(6) representative, Alyssa Debiak, who is not an engineer.  See Dkt. No. 46-3 at 54–55.  Ms. Debiak did not explain how to read these drawings, how the numbers and diagrams correspond to Plaintiff's Stand, or what the specifications for that model's metal legs, in fact, were.  Id.  Additionally, the Magistrate Judge previously held in this case that one of Defendant's two expert witnesses could not opine on whether the Stand was manufactured defectively based on his

9

measurements because "comparing the subject stand to the manufacturer's specifications is not within his field." See Dkt. No. 72 at 25.   If Defendant's expert in tree stand hunting accidents cannot opine as to the Stand's measurements in comparison to the manufacturer's specifications, it follows that neither may Plaintiff himself.   A comparison of Plaintiff's measurements to a manufacturer's specifications is an expert opinion that requires "scientific, technical, or other specialized knowledge." See Fed. R. Evid. 701(c), 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).   Although Plaintiff has previously been employed as a sheet rocker, a roofer, and a builder, he does not purport to be an expert witness.   See Dkt. No. 63-1; Fed. R. Evid. 702.   Nor is there any information in the record regarding Plaintiff's methodology for performing these measurements, his prior experience making such measurements, or how he compared them to the manufacturer's specifications.   See Fed. R. Evid. 702. Plaintiff may not opine as to whether the Stand's metal thickness did not comply with the manufacturer's specifications, so this argument does not create a genuine issue of material fact as to a defect in the Stand.

Plaintiff's other two allegations of defect are likewise not supported by the evidence.   He asserts that the metal sleeve connecting sections of the Stand should have covered the "crimp" on the end of one section; apparently, this crimp "make[s] the

tubing smaller, so that it will slide into the next section." See
Dkt. No. 63 at 12. Plaintiff argues that "[t]he legs bent at the
crimp," causing the Stand to collapse, because this metal sleeve
"did not cover the crimp." Id. at 12–13; see also Dkt. No. 46-10
(photograph showing the Stand's leg bent at this "crimp" section).
In support of this theory, Plaintiff cites again to the deposition
of Ms. Debiak—who, as previously stated, is not an engineer. See
Dkt. No. 63 at 12 (citing Dkt. No. 46-3 at 54–55). In fact, when
asked whether the "section of crimp metal . . . is . . . as strong
as the metal that is not crimped," Ms. Debiak says: "I can't answer
that, I'm not an engineer." Dkt. No. 46-3 at 38. Plaintiff also
deposed Defendant's mechanical engineering expert, George
Saunders, about the metal sleeve and crimped section, and Mr.
Saunders said that "[t]he sleeve basically adds material . . .
which makes [the Stand] stronger." See Dkt. No. 46-11 at 13.
However, Mr. Saunders never says or suggests that the metal sleeve
on the Stand was not, in fact, manufactured correctly. See id.
Plaintiff's argument as to the metal sleeve's failure to cover the
crimp is simply Plaintiff's speculation,[2] which is insufficient to
allow a jury to find that the Stand was defective in this way.

---

[2] Plaintiff also states that "[o]ther stands manufactured by Defendant have bent
at the same spot" near the metal sleeve. Dkt. No. 63-4 ¶ 3 (citing Dkt. No.
46-4 (photographs of other ladder stands which have bent); Dkt. No. 46-9 at 37
(Defendant's tree stand accident expert stating that he has seen other bent
ladders near the sleeve)); see also Dkt. No. 46-3 at 25–26 (Defendant's
representative stating that Defendant has been involved in prior lawsuits where
ladder stands have bent). While it is true that evidence of other incidents
involving the product is admissible and relevant to the issue of notice of

Finally, Plaintiff alleges the Stand had a manufacturing defect in that the "microscopic fibers in the [ratchet] strap were brittle."  See Dkt. No. 63 at 3.  In support, Plaintiff cites Defendant's engineering expert's deposition where the expert says the fibers in the strap "broke in a brittle manner."  See id. (citing Dkt. No. 46-11 at 38).  But Defendant's expert then says this brittleness "only happens after long-term exposure to the environment."  See Dkt. No. 46-11 at 38.  Plaintiff has not presented *any* evidence that the strap's brittleness was a manufacturing defect as opposed to a consequence of his long-term outdoor use of the strap.  See Jenkins v. Gen. Motors Corp., 524 S.E.2d 324, 325 (Ga. Ct. App. 1999) ("To recover under [a strict liability] theory, [plaintiff] must show a defect existed in the product at the time it was sold to him or otherwise came under his control.")  Even making all inferences in the nonmovant's favor, no reasonable jury could find that Plaintiff has demonstrated the Stand was manufactured defectively.

In short, Plaintiff relies on speculation instead of evidence to show a manufacturing defect.  Of course, plaintiffs need not

---

defect, see Mack Trucks, Inc. v. Conkle, 436 S.E.2d 635, 640 (Ga. 1993), in every other substantially similar case where a ladder stand bends, the bend is due to the user's misuse of the stand.  See Dkt. No. 46-9 at 37; Dkt. No. 46-3 at 25-26.  Further, Plaintiff brings forth no evidence showing that "any common defects shared the same causation," which is necessary to admit incidents involving the same product.  See Cooper Tire & Rubber Co. v. Crosby, 543 S.E.2d 21, 24 (Ga. 2001).  Based on the record, any prior incidents involving this product's bending at the ladder section are inadmissible to show a manufacturing defect.

always produce experts to establish the existence of a product defect.  See, e.g., Rose v. Figgie Intern., Inc., 495 S.E.2d 77 (Ga. Ct. App. 1997); cf. Graff, 310 F. App'x at 305–06 (observing that an inference of a defect "is particularly appropriate where the product is destroyed or otherwise unavailable for testing"). However, even if Plaintiff *were* able to use circumstantial evidence to establish a defect in this case, "the inference of a manufacturing defect is not probative in light of . . . conflicting expert testimony."  See Graff, 310 F. App'x at 306.  Here, Plaintiff asks the trier of fact to infer a manufacturing defect without an expert or direct evidence, while Defendants have a mechanical engineering expert who says his "[v]isual inspection of the subject treestand did not reveal any indications of a configuration or material deviation from the intended product design." See Dkt. No. 42-12 at 20–21; see also Jenkins, 524 S.E.2d at 325 (refusing to allow plaintiff to rely on circumstantial evidence of a brake defect where there were "several plausible explanations for the brake failure, including negligent brake repair or excessive trailer weight").  In light of Defendant's expert testimony, Plaintiff's speculations do not create a genuine issue of material fact as to a product defect.

### b.    Proximate Cause

Assuming, arguendo, that Plaintiff *could* show a genuine issue of fact as to a defect in the Stand, summary judgment in

Defendant's favor would still be appropriate because Plaintiff cannot show causation.  To survive summary judgment on causation, a plaintiff must show more than the "mere possibility" that his injuries were caused by the defect; rather, he "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."  Walker v. Blitz USA, Inc., 663 F. Supp. 2d 1344, 1363 (N.D. Ga. 2009) (quoting Ogletree v. Navistar Int'l Transp. Corp., 535 S.E.2d 545, 548 (Ga. Ct. App. 2000)).   Further, "while a plaintiff need not present circumstantial evidence to disprove all causes other than a manufacturing defect, a plaintiff relying on circumstantial evidence must 'provide evidence that would permit a jury to select [his or her] explanation, that of a manufacturing defect, as the most likely cause.'"  O'Shea v. Zimmer Biomet Holdings, Inc., 342 F. Supp. 3d 1354, 1360–61 (N.D. Ga. 2018) (quoting Williams v. Mast Biosurgercy USA, Inc., 644 F.3d 1312, 1321 (11th Cir. 2011)) (applying Georgia law).

Plaintiff asserts in his Complaint that "[t]he defective ladder stand was the proximate cause of Plaintiff's injuries."  See Dkt. No. 1 ¶ 54.  Defendant argues in its Motion for Summary Judgment that any defect in the Stand was *not* the proximate cause of the accident; instead, Plaintiff's failure to follow the Stand's instructions caused the Stand to collapse.  See Dkt. No. 42-3 at

14

12–13.  Specifically, Defendant claims that Plaintiff: 1) failed to properly install the Stand; 2) exposed the Stand to the elements for prolonged periods of time; and 3) failed to wear a full-body safety harness.  Id. at 12–14.

In support of its contention that Plaintiff failed to properly install the Stand, Defendant points to Plaintiff's deposition testimony where Plaintiff says there is "nothing missing" from the photographs of the scene of the accident.  See Dkt. No. 42-2 ¶¶ 27–28; Dkt. No. 42-4 at 23; Dkt. No. 42-14 (photographs of the fallen Stand in the woods where the accident occurred).  Those photographs and Plaintiff's testimony, Defendant contends, demonstrate that "Plaintiff had only one of the five installation straps necessary to properly install the [Stand] secured to the tree."  See Dkt. No. 42-2 ¶¶ 27–28.  However, a closer examination of Plaintiff's deposition testimony shows that Plaintiff consistently speaks of using two straps.  See Dkt. No. 42-2 at 20, 24, 26.  Plaintiff describes ratcheting one strap to the top of the tree and ratcheting a separate strap to the support bar below.  See id. Still, Plaintiff used only two out of the five necessary straps, and it is undisputed that the Stand required more than two straps for proper assembly.  See Dkt. No. 42-7 at 4 (instruction pamphlet for the Stand model listing two ratchet straps, two installation

straps, and one tiedown rope as necessary for installation).[3] Defendant's expert opines that Plaintiff's failure to properly install the Stand caused the top strap to break and the Stand to collapse. Specifically, Defendant's mechanical engineering expert concludes that "[Plaintiff] caused this incident due to his misuse of the product prior to the incident by . . . his failure to follow the related instructions and warnings," including his failure to install all necessary straps. See Dkt. No. 42-12 at 17–18, 24.

Defendant next alleges that Plaintiff's exposure of the Stand to the elements allowed it to degrade and caused the Stand to collapse. See Dkt. No. 42-3 at 14. Defendant claims that the strap's deterioration and the Stand's visible corrosion are "consistent with a seven[-]year[-]old product that was exposed to the elements and not properly stored indoors when not used." See id. at 13. In support of this contention, Defendant points to its engineering expert's opinion that "[Plaintiff] allowed his treestand to remain in the elements for an extended period of time

---

[3] Plaintiff has presented an errata sheet that would trouble any court, given the nature and number of "changes" made by Plaintiff to his sworn testimony. See Dkt. No. 63-3. Even if the changes are credited, though, summary judgment is proper. So, while other cases may present difficult decisions about what to do with such an errata sheet, this case does not. In this extraordinarily lengthy deposition errata sheet, Plaintiff, for the first time, claims that he remembers reviewing instructions but "can[']t say the[y] were exact[ly]" the ones Defendant showed to him. See Dkt. No. 63-3 at 2 (referring to Dkt. No. 42-7 (Remington Model ASLS-520 Two-Man Ladderstand instruction pamphlet)). However, Plaintiff does not refute that the instruction pamphlet reflects the correct model and make of his Stand; in fact, Plaintiff points to engineering drawings for the "ASLS-520" model to support his allegations about the metal's thickness. See Dkt. No. 45-7.

(i.e. years) as evidenced by the extensive corrosion observed during the inspection" and "[l]ong term installation on the tree would . . . increase the stress of the rachet strap due to tree growth." See Dkt. No. 42-2 at 11–12 (citing Dkt. No. 42-12 at 17–18); see also Dkt. No. 42-11 at 11 (Defendant's other expert opining that the Stand "ha[d] been left in the environmental elements for many years"). Defendant's engineering expert concludes that by allowing the Stand "to be exposed to the elements", Plaintiff caused the accident and his injuries. See Dkt. No. 42-12 at 22–23.

Finally, Defendant contends that Plaintiff's failure to wear a full-body safety harness caused Plaintiff's injuries. See Dkt. No. 42-3 at 14. Plaintiff candidly admits that he did not wear the full-body safety harness, explaining that he personally believes the risks of wearing such a harness outweigh the potential benefits. See Dkt. No. 42-4 at 12–13. Defendant's expert concludes that Plaintiff's failure to wear this full-body harness also caused his accident and injuries. See Dkt. No. 42-12 at 22.

At the pleading stage, Plaintiff did not attempt to explain how any defect might have caused the Stand to collapse. Even if Plaintiff had shown a defect, the inference that this defect caused his injury "is not a 'natural inference that the juror could make through human experience.'" See Silverstein v. Procter & Gamble Mfg. Co., 700 F. Supp. 2d 1312, 1316 (S.D. Ga. 2009) (quoting

Allison v. McGhan Med. Corp., 184 F.3d 1300, 1320 (11th Cir. 1999)).  While courts occasionally allow circumstantial evidence to establish causation, those circumstances involve inferences based on common sense.  For example, in a recent Eleventh Circuit case, Greater Hall Temple Church of God v. Southern Mutual Church Insurance Company, the Court held that plaintiff's circumstantial evidence was enough for a jury to find a hurricane caused the church's roof damage.  No. 20-10544, 2020 WL 3989081, at *5-6 (11th Cir. July 15, 2020).  Plaintiff's evidence in Greater Hall consisted of witnesses who testified that when they returned to the church after the storm, trees were uprooted, debris was everywhere, the building had new leaks, and the entire roof had shifted.  Id. at *6; see also U.S. Fire Ins. Co. v. Tuck, 155 S.E.2d 431, 436-37 (Ga. Ct. App. 1967) (holding that plaintiff's circumstantial evidence, including two witnesses who saw lightning strike near plaintiff's pool and plaintiff's testimony that the pool was crushed when he returned home after the storm, was enough for a jury to conclude that lightning struck and destroyed the pool).  Based on Plaintiff's initial pleadings, a reasonable jury could not infer that a product defect caused Plaintiff's injuries as opposed to his obvious misuse of the Stand.  Unlike the above plaintiffs' natural theories of causation (i.e., "lightning struck and then the pool was destroyed" and "the storm hit and then the church's roof was damaged"), Plaintiff asks us to overlook the

simple explanation of "Plaintiff did not follow instructions and then the tree stand broke" in favor of some other vague theory of causation. See Greater Hall, 2020 WL 3989081, at *6; Tuck, 155 S.E.2d at 437.

Therefore, based on the evidence that Defendant brought forth in its Motion, Defendant met its burden of demonstrating there was no genuine issue of material fact as to the proximate cause of Plaintiff's injuries. See Celotex Corp., 477 U.S. at 325. The onus was thus on Plaintiff to come forward with affirmative evidence demonstrating such an issue of fact. See Anderson, 477 U.S. at 257. Plaintiff failed to meet his burden in this respect.

Still assuming, arguendo, that Plaintiff sufficiently alleges a product defect, Plaintiff still provides no evidence-based causative link between his allegations of defect and his injuries, nor does he provide evidence that would allow the trier of fact to choose his explanation of causation over Defendant's. See O'Shea, 342 F. Supp. 3d at 1360-61. As to Plaintiff's own theory of causation, the record is devoid of evidence showing that the Stand collapsed because the metal was too thin and the metal sleeve did not cover the crimp.[4] Plaintiff simply states that "[t]he laws of

---

[4] Of course, Plaintiff also alleges that the Stand was defective because the strap was brittle. Dkt. No. 63 at 17. If Plaintiff had any evidence that the strap was brittle when he purchased it, he might be able to show a genuine issue of material fact as to defect and causation. However, Plaintiff has none, so the Court addresses his other allegations of defect here instead. See supra section I.1.a.

gravity kept the ladder stand against the tree until some other force moved it.  The only event that would have moved the ladder stand from the tree is the bending of the legs." See Dkt. No. 63 at 11.  Plaintiff cites to Defendant's engineering expert's deposition in support of this contention, but the expert never says that thin metal or an improperly placed sleeve would cause the Stand to collapse.  See id. (citing Dkt. No. 46-11 at 29 (Defendant's expert discussing the laws of gravity with Plaintiff)).  In short, there is no evidence supporting a causal link between those alleged defects and Plaintiff's injuries.

Even if Plaintiff provided evidence of that causal link, he must still come forth with evidence that would allow a reasonable juror to choose his theory of causation over Defendant's.  See O'Shea, 342 F. Supp. 3d at 1360–61.  He does not.  Plaintiff attempts to attack each of Defendant's theories of causation, but he brings forth no evidence to support his contentions.

In response to Defendant's claim that Plaintiff failed to properly install the Stand, Plaintiff makes two arguments.  First, he admits he only used two straps when installing the Stand but claims these were the only straps included in the product's box. See Dkt. No. 63 at 24.  Plaintiff himself, however, affirmed multiple times that he received all of the straps and parts that were supposed to come with the product.  See Dkt. Do. 42-4 at 18, 20.  For the first time, in his response to Defendant's Motion,

Plaintiff claims the box contained only two straps.  See Dkt. No. 63 at 24; Dkt. No. 63-3 at 2.  Even if this new assertion were true, Plaintiff states in his deposition that he read the instructions that came with the Stand;[5] he therefore should have known he did not have all of the parts necessary to properly assemble the Stand.  See Dkt. No. 46-1 at 18.  Second, Plaintiff argues that "[n]one of the straps were weight bearing" and "[i]t is undisputed that, consistent with the laws of gravity, the tree and the ladder stand are what holds the weight of the occupant" instead of the straps.  See Dkt. No. 63 at 10, 21.  This is simply Plaintiff's speculation, unaided by an expert's opinion or other evidence.  Plaintiff cites to Defendant's engineering expert's deposition to support this contention, but that same expert also says that Plaintiff's failure to install all of the necessary straps "compromised the structural integrity of the installation," causing Plaintiff's injuries.  See id. at 10 (citing Dkt. No. 46-11 at 30); Dkt. No. 42-12 at 18.  Plaintiff's argument that the straps are not weight-bearing is unsupported by the evidence, and it does not undermine Defendant's causation argument.

Plaintiff next refutes Defendant's allegation that he exposed the Stand to the elements for many years by simply stating that Plaintiff "did not leave the ladder stand and straps tied to a

---

[5] See supra note 3.

tree for seven years" and "[t]he ladder stand has no evidence of
being tied to a tree for seven years."  See Dkt. No. 63 at 21.
Plaintiff cites his own deposition in support, reiterating that he
bought the Stand in 2015, left it outside during the 2015 hunting
season, and then set it up shortly before the incident.  See id.
at 24 (citing Dkt. No. 46-1 at 21, 22).  Of course, Defendant and
its experts contend otherwise based on the brittleness of the strap
and corrosion on the Stand.  See Dkt. No. 42-12 at 17–18; Dkt. No.
42-11 at 11.  However, even if Plaintiff's testimony created a
genuine issue of fact here, it would not be material because
Defendants have demonstrated other misuses of the Stand that could
have caused the Stand to collapse.  Namely, Plaintiff's failure to
properly install the Stand and his failure to wear the safety
harness make this particular factual dispute immaterial to the
issue of proximate cause.

Finally, Plaintiff readily concedes that he did not wear the
full-body safety harness, but he speculates that even if he did
wear his harness, he would have been injured.  See Dkt. No. 63 at
25.  Plaintiff bases this argument on his own belief that a body
harness can be dangerous; he states he has "read the downsides of
hanging from a tree [for] very long."  See Dkt. No. 42-4 at 12.
However, this unsupported argument is irrelevant to Defendant's
contention that Plaintiff would not have suffered *this* injury had
he worn the body harness.  In essence, Plaintiff argues here that

22

even if *not* wearing a body harness could have caused these injuries, his *wearing* one could have caused *different* injuries. This is not an effective argument against Defendant's theory of causation.

Overall, Plaintiff has not produced evidence from which a reasonable juror could conclude that the Stand had a manufacturing defect that proximately caused his injuries.  To be sure, Plaintiff is not required to "provide evidence capable of disproving all other potential causes to survive summary judgment; however, []he must provide evidence that would permit a jury to select h[is] explanation, that of a manufacturing defect, as the most likely." See Williams, 644 F.3d at 1321.  Plaintiff has not done so. Instead, he has come forth with conjecture—not evidence—to show proximate cause, which is insufficient to discharge his burden.

### 2. Failure to Warn

Under Georgia law, a plaintiff asserting a failure-to-warn products liability claim must establish three things: 1) "that defendant had a duty to warn," 2) "that the defendant breached that duty," and 3) "that the breach proximately caused the plaintiff's injury." Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).  For the same reason Plaintiff's strict liability claim must be dismissed, the Court finds that to the extent Plaintiff seeks to assert a failure-to-warn claim, that claim must likewise be dismissed.  Even if Plaintiff were able to

23

show Defendant breached its duty to warn, he cannot show proximate cause.  See supra subsection I.1.b.

### 3. Breach of Warranty

To the extent that Plaintiff intended to allege implied warranty claims under O.C.G.A. § 11-2-314 and § 11-2-215, these claims also fail.  To recover under Georgia law for an implied warranty of merchantability, a plaintiff must show "not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." Kraft Reins. Ir., Ltd. v. Pallet Acquisitions, LLC, 845 F. Supp. 2d 1342, 1356 (N.D. Ga. 2011) (quoting O.C.G.A. § 11-2-314, UCC Comment 13)).  Plaintiff's failure to show a defect or proximate cause means he cannot show breach of implied warranty. See supra subsection I.1.b.  Moreover, to recover for breach of an implied warranty of fitness for a particular purpose, Georgia law "requires *both* the seller to have reason to know of the particular purpose for which the goods are required *and* the buyer to rely on the seller's skill or judgment in selecting or furnishing suitable goods." See Jones v. Marcus, 457 S.E.2d 271, 272 (Ga. Ct. App. 1995) (quoting Bruce v. Calhoun First Nat. Bank, 216 S.E.2d 622, 625 (Ga. Ct. App. 1975)).  Plaintiff has not explained for what particular purpose he intended to use the Stand, much less whether he communicated such use to Defendant.  Therefore, any breach of warranty claims Plaintiff asserts must also fail.

24

## II.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff requests summary judgment in his favor as to fifteen discrete issues, fourteen of which address the defenses raised by Defendant in its Answer, and one of which addresses whether Defendant is the manufacturer of the Stand (a fact to which the parties have already stipulated, dkt. no. 37).  Dkt. No. 44. Because the Court grants Defendant's Motion for Summary Judgment, Plaintiff's claims are dismissed and his Motion for Partial Summary Judgment is therefore moot.

### CONCLUSION

For the above reasons, the Court finds that a reasonable juror could not conclude, based on the evidence presented, that a product defect was the proximate cause of Plaintiff's injury.  Accordingly, Defendant's Motion for Summary Judgment, dkt. no. 42, is **GRANTED**. Plaintiff's Partial Motion for Summary Judgment, dkt. no. 44, is **DENIED as moot**. There being no claims remaining, the Clerk is **DIRECTED** to close this case.

**SO ORDERED**, this 30th day of September, 2020.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA