[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 20-14078

_____

PAUL CREWS,

                    Plaintiff-Appellee,

*versus*

TAHSIN INDUSTRIAL CORP. USA,

                    Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 5:18-cv-00078-LGW-BWC

_____

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 2 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 2 of 14

2                Opinion of the Court                20-14078

Before WILLIAM PRYOR, Chief Judge, JORDAN, Circuit Judge, and BROWN,[*] District Judge.

PER CURIAM:

Plaintiff Paul Crews was injured after his hunting tree-stand collapsed. He filed a products liability action under Georgia law against Tahsin Industrial Corp. USA ("Tahsin"), the manufacturer of the tree-stand, for an alleged manufacturing defect, failure to warn, and breach of warranty. The district court granted Tahsin summary judgment on all three claims, finding Mr. Crews failed to offer sufficient evidence from which a reasonable juror could conclude the tree-stand had a manufacturing defect that proximately caused his injuries.

Mr. Crews appeals the district court's grant of summary judgment. Because we conclude the district court improperly weighed evidence about the date on which Mr. Crews bought the stand, we reverse in part.

## I.   BACKGROUND

The tree-stand, a fifteen-foot ladder with a two-person seat at the top, essentially leans against a tree to provide an elevated position for hunters. If properly installed, five straps hold the stand to the tree. Mr. Crews says he bought the tree-stand in August or September 2015 from a Wal-Mart store in Waycross, Georgia. He

---

[*] Honorable Michael L. Brown, United States District Judge for the Northern District of Georgia, sitting by designation.

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 3 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 3 of 14

20-14078               Opinion of the Court                3

first installed it before the 2015 hunting season. He hunted from the stand about two dozen times from September 2015 to late December 2015, after which he took the stand down, accounted for all its parts, and stored it in his barn.

In late September or early October 2016, Mr. Crews retrieved the stand from his barn and installed it by "put[ting] the brace that goes from the ladder to the tree, ratchet[ing] it," and then "go[ing] up to the tree to do the top ratchet to secure it." He said the only straps he used to install the stand were the strap securing a support bar to the tree and the top ratchet strap securing the top of the stand to the tree. This means he used only two of the five straps he should have used to secure the stand to the tree. He left the stand attached to the tree for use throughout the hunting season.

In October 2016, Mr. Crews and his 14-year-old son returned to the stand to hunt. They climbed onto the seated platform. The stand collapsed, sending them to the ground. While Mr. Crews's son was largely uninjured, Mr. Crews landed in a seated position and severely injured his back. Mr. Crews sued Tahsin, asserting manufacturing defect, failure to warn, and breach of warranty. He alleged the stand collapsed because the legs broke or bent, causing the ratchet strap at the top of the stand to break. The district court granted summary judgment for Tahsin on all claims, finding Mr. Crews had presented no evidence raising a genuine issue of material fact as to the existence of a defect or proximate cause. Mr. Crews appealed.

## II. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1276 (11th Cir. 2001). A district court may grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

### A. MANUFACTURING DEFECT

To establish a manufacturing defect under Georgia law, a plaintiff must prove: (1) the defendant manufactured the product; (2) the product, when sold, was not merchantable and reasonably suited to the use intended; and (3) the product's defective condition proximately caused the plaintiff's injury. *Brazil v. Janssen Rsch. & Dev. LLC*, 196 F. Supp. 3d 1351, 1357 (N.D. Ga. 2016). Only the last two elements—defect and causation—are in dispute. The Court addresses each.

Under Georgia law, "[c]ircumstantial evidence may be used to establish the existence of a manufacturing defect at the time the product left the manufacturer, even where the product is consumed or destroyed in the use that resulted in the plaintiff's injury." *Skil Corp. v. Lugsdin*, 309 S.E.2d 921, 924 (Ga. Ct. App. 1983). The district court explained that, although a defect can sometimes be inferred from circumstantial evidence, such cases tend to be those where the product failure destroys evidence so that it is impossible to determine whether the product had a manufacturing defect. It

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 5 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 5 of 14

20-14078                Opinion of the Court                5

thus found the inference of a defect to be unavailing in this case. We agree. The stand was not destroyed, so both parties had ample opportunity to examine and test it. And the existence of a manufacturing defect is not the only plausible explanation for why the stand collapsed—Tahsin's theory that deterioration and corrosion caused by long-term outdoor exposure led the stand to collapse or that Mr. Crews did not properly attach the stand to the tree are other plausible explanations. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1377 n.12 (M.D. Ga. 2010) ("Where the existence of a manufacturing defect is not the only plausible explanation for a product's failure, the product's failure, standing alone, is not sufficient to establish a manufacturing defect.").

Given this conclusion, Plaintiff offered three pieces of direct evidence to show a manufacturing defect: (1) the metal in the treestand's legs was thinner than called for by the manufacturer's specifications, (2) a metal sleeve designed to add strength to a joint in the stand's legs did not cover the entire area needing reinforcement as called for by the manufacturer's specifications, and (3) the ratchet strap that connected the top of the stand to the tree was not as strong as it were supposed to be.

The district court found none of this evidence created a genuine issue of material fact as to a defect in the stand. We agree on the first two but disagree as to the third.

As to the first allegation, Mr. Crews measured the thickness of the metal in the ladder legs and set forth those measurements in

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 6 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 6 of 14

6                        Opinion of the Court                    20-14078

his affidavit. The district court held Mr. Crews could not opine as to whether the metal thickness complies with the manufacturer's specifications because he is not an expert. Mr. Crews contends the district court erred because at no point did he offer an opinion about how his measurements compared to the manufacturer's specifications. In his mind, all he did was provide measurements. While that may be, his measurements mean nothing without some way of comparing them to the manufacturer's specifications. Mr. Crews says the measurements do not meet the manufacturer's specifications set forth in engineering drawings that he authenticated through a deposition of Tahsin's 30(b)(6) representative, Alyssa Debiak. But, as the district court explained, Ms. Debiak is not an engineer, and she testified she only had a "pedestrian understanding" of the drawings. Indeed, she did not explain how to read the drawings, how the numbers and diagrams correspond to Mr. Crews's stand, or what the specifications for the model's metal legs were. All we have are Mr. Crews's measurements, unexplained engineering drawings, and his argument about how they compare. That does not create a genuine issue of fact. George Saunders, Tahsin's mechanical engineering expert, said he measured some of the stand, and his measurements were consistent with the specifications. Mr. Crews faults Mr. Saunders for not measuring everything. But even if we disregard Mr. Saunders's measurements, that does not mean the metal thickness in the stand did *not* meet the specifications—it just means there is no evidence one way or the other. So there is still no evidence that creates a genuine issue.

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 7 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 7 of 14

20-14078                Opinion of the Court                7

In support of his argument about the second alleged defect, Mr. Crews identified testimony from Mr. Saunders, explaining that both legs of the stand consist of two separate sections, with a crimped end of one section sliding into the end of the other section. The manufacturer's specifications called for a metal sleeve on each leg to cover the crimped area to reinforce the joint. Mr. Crews argues that this established that the stand should have been manufactured for the sleeve to cover the crimped area completely.

Mr. Crews argued at summary judgment that a post-collapse photograph of one leg shows the sleeve did not do that. He claims that photograph precludes summary judgment. The photograph shows deformation, specifically a rip and bending of the metal caused during the accident. But it does not clearly show any crimping. No witnesses provided testimony that the photograph shows the crimped area or that the sleeve does not cover the entire area it was supposed to cover. Perhaps Mr. Crews suggests the concaved nature of the side opposite the most extensive deformation is crimped. But the record contains no evidence to support that contention. Mr. Crews's naked assertion that the sleeve does not adequately cover the crimped area cannot create a genuine dispute of material fact as to this alleged defect. We thus affirm the district court's finding that Mr. Crew's speculation cannot allow a jury to find the stand was defective in this way.

The ratchet strap, however, is a different story. During discovery, Mr. Saunders used a digital microscope to examine the single ratchet strap Mr. Crews used to secure the top of the stand to

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 8 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 8 of 14

8                    Opinion of the Court                    20-14078

the tree. That inspection showed "a brittle mode of separation dominated the observed fibers." He determined the strap was "99.9 percent degraded" from its intended strength. Mr. Saunders concluded that "[t]he root cause" of the collapse "was the separation of the significantly degraded ratchet strap." He explained that, when Mr. Crews and his son reached the top of the stand, the strap broke, allowing the stand to pull away from the tree and placing too much weight on the legs of the stand. That caused the legs to buckle and Mr. Crews and his son to fall. From Mr. Saunders's analysis and Mr. Crew's own testimony that he bought the treestand new in 2015, Mr. Crews argued at summary judgment that the microscopic fibers in the strap were brittle when manufactured.

Mr. Saunders gave a conflicting opinion. He explained that brittle separation of fibers generally only happens after changes to the polymer from long-term exposure to the environment. He explained that the degradation of the strap he observed could have only occurred from the stand having been left outside for years, not for months or weeks. Given this, Mr. Saunders said it was "highly improbable" that Mr. Crews bought the stand in 2015, as the stand was at least six years old at the time of the incident. Mr. Saunders understood his analysis of the stand's condition was in direct opposition to Mr. Crew's testimony that he bought the stand in 2015, used it for several months, and then stored it in a barn until the 2016 hunting season. He still explained that the condition of the strap (as well as some corrosion to the metal portions of the stand) "is not consistent with the limited exposure to the environment to

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 9 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 9 of 14

20-14078               Opinion of the Court                9

which Mr. Crews testified." Tahsin's safety expert, Lorne Smith, similarly found the stand had been left out in the elements for years, which caused the strap to be so deteriorated it was no longer usable. Mr. Smith added "[t]here is no way" Mr. Crews bought the stand in 2015.

The district court credited Tahsin's evidence and disregarded Mr. Crews's testimony when it held that Mr. Crews did not present "*any* evidence that the strap's brittleness was a manufacturing defect as opposed to a consequence of his long-term outdoor use of the strap." This was an exercise in weighing the evidence, an activity improper at summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ("[A]t the summary judgment stage the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). The district court's reading of the evidence was reasonable, and perhaps it was correct, but such a conclusion would be appropriate only after presentation of the evidence to a jury. At summary judgment, the only question is whether there is enough evidence on which "a reasonable jury could return a verdict for the nonmoving party," *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011), and "[t]he evidence of the non-movant is to be believed," *Anderson*, 477 U.S. at 255. Crew's testimony, if believed, would allow a jury to conclude the brittleness of the strap resulted from a manufacturing defect rather than from his neglect of the stand in allowing it to be exposed to the elements for some number of years.

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 10 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 10 of 14

10                      Opinion of the Court                    20-14078

As for causation, the district court acknowledged the factual dispute about the purchase date but found the dispute was not material to the issue of proximate cause. It concluded Tahsin had shown other misuses of the stand that could have caused the stand to collapse, such as Mr. Crews's failure to wear the safety harness and his failure to properly install the stand. It is true that under Georgia law a plaintiff's misuse of a product can break the chain of causation. *Chi. Hardware & Fixture Co. v. Letterman*, 510 S.E.2d 875, 878 (Ga. Ct. App. 1999); *see also Woods v. A.R.E. Accessories, LLC*, 815 S.E.2d 205, 210 (Ga. Ct. App. 2018) ("[A] product that causes harm as a result of unforeseeable misuse is not defective."). But a manufacturer remains liable for a defect which under foreseeable conditions is likely to cause injury. *Woods*, 815 S.E.2d at 210 (considering "reasonably foreseeable product use or misuse" is appropriate in deciding whether a manufacturer is liable for a defective product).

Tahsin provided two full body safety harnesses with the tree-stand. Tahsin's written warnings and instructions stressed the importance of remaining connected to the tree with a full body safety harness, noting "[o]nce you reach the top, **IMMEDIATELY ATTACH YOUR SAFETY HARNESS TO THE TREE**" and "**ALWAYS** wear a Full Body Safety Harness after leaving the ground." Tahsin warned that failure to wear the harness may result in serious injury or death. The harness prevents a hunter from falling to the ground and becoming injured if the hunter becomes unstable or the stand becomes unsecure. On the other hand,

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 11 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 11 of 14

20-14078                Opinion of the Court                11

Tahsin also warned that prolonged suspension in a harness may be fatal. Mr. Crews admitted he did not wear a safety harness at the time of the accident. He explained that he has "read the downsides of hanging from a tree [for] very long" and thus personally believed the risks of wearing such a harness outweighed the potential benefits. Mr. Crews also offered evidence that, at least as of 2009, 82% of hunters did not wear safety harnesses. Even if that percentage had decreased by 2015, proximate cause is generally left to a jury unless it is plain and undisputed. *See S. Bell Tel. & Tel. Co. v. Dolce*, 342 S.E.2d 497, 498 (Ga. Ct. App. 1986). If the stand was defective, there is a genuine issue as to whether Tahsin could foresee that a hunter would not wear the safety harness. It does not appear the district court considered this before granting summary judgment.

As to improper installation, Tahsin's experts testified that tests of similar, unstrapped tree-stands showed they collapsed only at weights greater than the combined weight of Mr. Crews and his son. So Mr. Crews's testimony about the purchase date raises a genuine issue of material fact about whether his failure to use the required straps during installation caused the collapse and thus his injuries.

But given how this case has been litigated and what remains for the district court on remand, Mr. Crews's arguments seem to counteract each other. Mr. Crews has maintained that the other straps were only needed for installation, that "none of the straps were weight bearing" according to Tahsin's expert, and that failure

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 12 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 12 of 14

12                    Opinion of the Court                    20-14078

to use all the straps should not have affected the tree-stand's ability to hold the combined weight of him and his son. He bases this argument on the fact Tahsin's expert said the ladder could withstand more than 300 pounds of weight with no straps attached, and he and his son weighed 260 pounds combined. So, he contends, "[s]ince *the lack of straps does not cause a ladder stand to collapse* at a weight of 260 pounds, the fact that more straps were not used by Mr. Crews is not the sole proximate cause of the collapse of the ladder and injury to Mr. Crews." In other words, Mr. Crews acknowledges that, even if the straps he did use were defective, failure to use all of them would not have been the sole cause of the tree-stand's collapse.

This might seem a dangerous concession on Mr. Crews's part given our above analysis of his other theories of a manufacturing defect and conclusion he has only raised a material issue of fact regarding a defect in the ratchet strap. But Tahsin has argued the degraded strap "caused the collapse." The logical inconsistency of Mr. Crews's argument, thus, does not require summary judgment. There is a genuine issue of material fact given the contradictions in Tahsin's expert reports, as identified above. We merely pause to acknowledge that does not align with Mr. Crews's current theory of the case.

### B.   FAILURE TO WARN

The district court granted summary judgment to Tahsin on the failure-to-warn claim in part because Mr. Crews could not show proximate causation. Having found the district court erred

in its analysis of causation, we conclude it erred in granting summary judgment to Tahsin on the failure-to-warn claim on that basis.

## IV.  BREACH OF WARRANTY

The district court granted summary judgment to Tahsin on the breach-of-warranty claim. The district court explained that Crew's breach-of-warranty claim, "[t]o the extent that" it was "allege[d]," failed both because Crews could not establish proximate causation and because Crews failed to explain what warranty was breached. "To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). To convince us, "an appellant's brief must include an argument containing 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *Singh v. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quoting Fed. R. App. P. 28(a)). And "[w]e have long held that an appellant [forfeits] a claim when he . . . raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo*, 739 F.3d at 681. Even if Crews had convinced us both that there is a genuine issue of fact as to proximate causation and that the genuine issue carries over to his breach-of-warranty claim, Crews forfeited his breach-of-warranty claim by not offering *any* legal authority to support it because the district court

Case 5:18-cv-00078-LGW-BWC   Document 83   Filed 05/18/22   Page 14 of 16
USCA11 Case: 20-14078   Date Filed: 05/18/2022   Page: 14 of 14

14                    Opinion of the Court                    20-14078

relied on a basis independent of proximate causation. We therefore affirm on this claim.

## V.  CONCLUSION

We **AFFIRM** the district court's grant of summary judgment for Tahsin on the breach-of-warranty claim, **VACATE** the district court's grant of summary judgment for Tahsin on the manufacturing defect and failure-to-warn claims, and **REMAND** for further proceedings.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 18, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-14078-JJ
Case Style: Paul Crews v. Tashin Industrial Corp USA
District Court Docket No: 5:18-cv-00078-LGW-BWC

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>each party to bear own costs</u>.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Tiffany A. Tucker, JJ</u> at <u>(404)335-6193</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs